UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| NAPOLEON FOLKS and ALAN GANDY, | ] ] ] | |
| Plaintiffs, | ] ] | |
| vs. | ] ] | 7:07-CV-01726-LSC |
| THE TUSCALOOSA COUNTY SHERIFF'S DEPARTMENT; SHERIFF EDMUND M. SEXTON, SR., as Sheriff, in his individual and official capacity; and TUSCALOOSA COUNTY CIVIL SERVICE BOARD, | ] ] ] ] ] ] ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration Defendant Sheriff Edmund M. Sexton,

Sr.'s ("Sexton") Motion to Dismiss (Doc. 6), filed on October 29, 2007.

Plaintiffs Napoleon Folks ("Folks") and Alan Gandy ("Gandy") filed suit

against the defendants alleging violations of Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 1981 ("1981") through 42 U.S.C. § 1983

("1983"), and the Fourteenth Amendment.  Specifically, Plaintiffs assert

claims for discrimination in violation of Title VII, § 1981, § 1983, and the Fourteenth Amendment; and for retaliation in violation of Title VII, § 1981, and § 1983.  Defendant Sexton moves to dismiss all claims against him in both his individual and official capacity because (1) in his official capacity, he is entitled to absolute immunity as a state official for the claims asserted by Plaintiffs pursuant to § 1983; (2) Plaintiffs have failed to assert allegations under § 1983 against Sexton in his individual capacity, and, alternatively, he is entitled to qualified immunity; (3) hiring decisions for the position of deputy sheriff are not subjected to Title VII because the position falls under the "personal staff" exemption; and (4) Title VII individual capacity claims are inappropriate. The issues raised in Defendant's motion to dismiss have been briefed by the parties and are now ripe for consideration.  Upon full consideration of the legal arguments and evidence presented, the motions are due to be granted in part and denied in part.

II.    Facts.[1]

_____

[1]Unless otherwise indicated, the facts are taken from Plaintiffs' Complaint.

Plaintiffs Folks and Gandy, African American males, are both currently employed as detention officers with the Tuscaloosa County Jail.  Folks has been employed with the Tuscaloosa County Sheriff's Department ("Sheriff's Department") from February 23, 1998 to present.  Gandy has been employed with the Sheriff's Department from 1998 to present.   During the times material to the averments of the Complaint, Defendant Sexton was the Sheriff of Tuscaloosa County, Alabama.

In February 2000, Folks asked his supervisor, Lieutenant Byron Wade ("Wade"), about the requirements for becoming a Tuscaloosa County Deputy Sheriff.  Wade informed Folks that he needed to perform successfully on a civil service examination.  In March 2001, Folks completed and successfully performed on the civil service exam.  After completing the civil service exam, Folks reported his successful performance to Wade; however, Wade failed to give Folks any further instructions as to the requirements for becoming a deputy sheriff.  While Wade failed to inform Folks of any further requirements for becoming a deputy sheriff, white employees allegedly received invitations to proceed to the next stage, which was completing a physical agility exam.  Upon learning of the next step, Folks requested to

take the physical agility test, and successfully completed it.  Despite his successful performance, he was allegedly not informed of future job openings nor was he selected as a deputy sheriff.  During the time period relevant to this Complaint, numerous white employees were selected to become deputy sheriffs; however, Folks and other black employees were only told about grant deputy slots, which are temporary positions with no benefits.

In 2000, Gandy successfully performed on both of the prerequisites for becoming a deputy sheriff, the civil service and physical agility exam.  After that Gandy noticed that at least eighteen white employees were offered positions as deputy sheriffs; however, he claims that he was neither informed about nor offered these positions.

Gandy discussed his concerns with his supervisor, Chief James Taggart.  Taggart informed Gandy that Wade selected who he wanted to hire for the deputy sheriff positions.  Gandy also discussed the alleged racial disparities in hiring with Lieutenant Baily and Chief Deputy Abernathy.  During these discussions, Gandy made it clear that he was qualified and interested in a deputy sheriff position; however, he was never offered a position.

Plaintiffs allege that from 1999 until the filing of their charges of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") in July of 2004, all nineteen newly hired deputy sheriffs allegedly were white.  Plaintiffs further assert that once the Sheriff became aware of the EEOC complaint, three black deputy sheriffs were hired.  However, neither Folks nor Gandy were offered such a position.  Plaintiffs claim that the Sheriff denied them the opportunity to become deputy sheriffs, and retaliated against them, because of the EEOC charge.

Plaintiffs allege that they have been discriminated and retaliated against because of their race in violation of Title VII, § 1981 through § 1983, and the Fourteenth Amendment.

III.    Standard of Review.

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). "[A] complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)(quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).   All "reasonable inferences" are drawn in favor of the plaintiff.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).   "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal."  *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003)(quoting *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).  Furthermore, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory."  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997).

IV.   Discussion.

A.   § 1981 through § 1983[2] and Equal Protection.[3]

1.   Official Capacity: Eleventh Amendment Immunity.

Defendant Sexton argues that Plaintiffs' claims for damages under § 1983 against him in his official capacity are due to be dismissed because, as a state official, he is entitled to absolute immunity for damages.

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const.

---

[2]Plaintiffs claim violations of § 1981 through § 1983.  To the extent that Plaintiffs bring these as separate actions, the Court finds that these actions should be treated as one cause of action under § 1983 since Sheriff Sexton is an executive officer of the State. *See Granger v. Williams,* 200 F. Supp. 2d 1346, 1352 (M.D. Ala. 2002)(citing *Godby v. Montgomery Co. Bd. of Educ.*, 996 F. Supp. 1390, 1411 (M.D. Ala.1998); *Butts v. County of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000)(holding that "§ 1983 constitutes the exclusive remedy against state actors for violations under § 1981"))("Although Plaintiffs bring their discrimination claims pursuant to both § 1981 and § 1983, the court finds that the claims are due to be merged into a single cause of action under § 1983.").

[3]Plaintiffs claim that Sexton deprived them of their Fourteenth Amendment right to equal protection by taking adverse action against Plaintiffs based on race.  "When an individual seeks redress in the courts for a violation of h[is] constitutional rights, []he may not sue directly under the Constitution. Rather, []he must make h[is] claim under 42 U.S.C. § 1983." *Kelley v. Troy State Univ.*, 923 F. Supp. 1494, 1500 (M.D. Ala.1996). Therefore, Plaintiffs' Equal Protection claims will be analyzed as a claim brought pursuant to § 1983.

Amend. XI.  According to the United States Supreme Court, "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances. . . ." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  "The Eleventh Amendment is an explicit limitation on the judicial power of the United States." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984)(quoting *Missouri v. Fiske*, 290 U.S. 18, 25 (1933)).  It prohibits federal courts from hearing federal and state claims, absent an exception,[4] "if such claims would result in an award of damages directly against a state or an official thereof." *Sanders v. Miller*, 837 F. Supp. 1106, 1110 (N.D. Ala. 1992)(citing *Pennhurst*, 465 U.S. at 119-20).  "This bar [against a damages action] remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)(citing *Cory v. White*, 457 U.S. 85, 90 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974))(internal citations omitted).

---

[4]The exceptions to Eleventh Amendment immunity are implicated where "the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In regard to immunity for a state official, "[t]he court must look to state law to determine whether a state official is covered by Eleventh Amendment immunity." *Sanders*, 837 F. Supp. at 1110 (citing *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir.1990)(citing *Mt. Healthy*, 429 U.S. at 280)).  Under Alabama law, a "sheriff is an executive officer of the State of Alabama, who is immune from suit . . . in the execution of the duties of his office." *Parker v. Amerson,* 519 So. 2d 442, 442-43 (Ala. 1987). However, a sheriff is not immune from actions brought "(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute." *Id.*; *see also Hereford v. Jefferson County*, 586 So. 2d 209, 210 (Ala. 1991).

Since Defendant Sexton, during the time period material to the averments of the Complaint, was the Sheriff of Tuscaloosa County, there is no doubt that he is entitled to share in the State's Eleventh Amendment

immunity.[5]  Plaintiffs' Complaint seeks injunctive, declaratory, and other relief, including back pay (plus interest), punitive damages, compensatory damages, nominal damages, liquidated damages, and benefits.  Plaintiffs' claims for monetary damages under § 1983 against Sexton in his official capacity are due to be dismissed because the Eleventh Amendment prohibits an award of damages against a sheriff in his official capacity under Alabama law.  *Sanders*, 837 F. Supp. at 1111; *Carr*, 916 F.2d at 1525-27; *Parker v. Williams*, 862 F.2d 1471, 1475-76, *overruled on other grounds* (11th Cir. 1989).  In addition, Plaintiffs are not entitled to recover retroactive damages of back pay (plus interest).  *Parker*, 862 F.2d at 1475-76 (quoting *Quern v. Jordan*, 440 U.S. 332, 338 (1979)("regardless of the entity named as

---

[5]In their response brief in opposition to the motion for summary judgment, Plaintiffs do not dispute that Sexton is a state official entitled to Eleventh Amendment Immunity. (Doc. 15.)  Rather, Plaintiffs contend that the "dismissal of the Plaintiffs' 1983 claims against Defendant Sexton in their entirety is inappropriate as Eleventh Amendment immunity does not bar injunctive relief, nor does it bar monetary relief, including costs, which is ancillary to such prospective injunctive relief."  *Id*. at ¶¶ 13-15.  In his reply, Sexton states that he "does not dispute those points and seeks only to dismiss the claims against him in his official capacity for monetary damages."  (Doc. 16 at ¶ 13.)  The monetary relief which Plaintiffs seek in their complaint includes retro-active back-pay damages, rather than costs that would be considered ancillary to prospective injunctive relief.  *Id*. at ¶ 14.

defendant, the Eleventh Amendment bars retroactive damage awards which must be paid by the state").

However, Sexton may be sued in his official capacity for declaratory relief, injunctive relief, and for monetary relief that is "ancillary" to such prospective injunctive relief.[6]  *Graham*, 473 U.S. at 169 n.18 (citing *Edelman*, 415 U.S. at 667-68 )(stating that where compliance with injunctive relief is prospective in nature, state officials would likely have to spend money from the state treasury in order to comply; therefore, such ancillary costs are permissible and are not barred by the Eleventh Amendment); *Parker*, 862 F.2d at 1475-76 (citing *Edelman*, 415 U.S. at 664)("[T]he Eleventh Amendment does not insulate from suit state officials acting in their official capacities, at least for prospective injunctive relief.").  Therefore, while Plaintiffs may recover monetary damages that are ancillary to prospective injunctive relief that may be awarded, they are not entitled to recover other monetary damages, including retroactive damages of back pay.

---

[6]*See Sanders*, 837 F. Supp. at 1111 (where the court held that Eleventh Amendment immunity may be asserted to dismiss the claims against a sheriff for damages, even though a sheriff may still be sued in his official capacity for injunctive relief).

Thus, Defendant's motion to dismiss is due to be granted in part as to this issue.

        2.     Individual Capacity:[7] Qualified Immunity.

---

[7]Defendant Sexton asserts that no allegations have been made against him in his individual capacity.  According to Federal Rule of Civil Procedure 8(a), a complaint must contain "1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, 2) a short and plain statement of the claim showing that the pleader is entitled to relief, and 3) a demand for judgment for the relief the pleader seeks." FED. R. CIV. P. 8(a)(2007).  In this case, the allegations in the Complaint, which purport to state a claim against Sexton, do not specifically address the capacity in which the Sheriff is sued.  The Complaint states that "the acts set forth in the Complaint were authorized, ordered, and/or done by the Sheriff . . . while actively engaged in the management of the Sheriff's department." (Doc. 1 at ¶ 8.)  Also, the Complaint provides that Sexton's selection of other African Americans as deputy sheriffs "is evidence of his purposeful and intentional retaliation against the plaintiffs." *Id*. at ¶ 46.  Thus, the Complaint's "statement of a claim" does not specifically make a claim against the Sheriff in his individual capacity.

However, the caption to the Complaint lists as a defendant "Sheriff Edmund M. Sexton Sr. as Sheriff, in his individual and official capacity." (Doc. 1.)  "[T]he caption of the complaint is not part of the statement of the claim under Rule 8.  The caption is something apart, being mandated by a different rule: [Federal Rule of Civil Procedure 10]." *Marsh*, 268 F.3d at 1024 n.4.  While the caption is "chiefly for the court's administrative convenience," it may be useful to look at the caption when the statement of the claim is ambiguous about a party's capacity. *Id*.; *see Hobbs v. E.E. Roberts*, 999 F.2d 1526, 1529-30 (11th Cir.1993)(using several factors, including caption, to resolve ambiguity of whether official sued in official or individual capacity).  "Where the complaint is unclear on 'whether officials are sued personally, in their official capacity, or both,' courts must look to 'the course of the proceedings' which will 'typically indicate the nature of the liability sought to be imposed.'" *Hobbs*, 999 F.2d at 1528 (quoting *Graham*, 473 U.S. at 167 n.14).  Since the statement of the claim does not specifically address the capacity in which Sexton is being sued, this Court will consider the caption and the brief in response to the motion to dismiss to resolve the ambiguity of whether Sexton is being sued in his individual capacity.  Both the caption and the Plaintiffs' response indicate that Sexton is being sued in both his individual and official capacity.  Therefore, this Court will assume that the Complaint purports to sue the Sheriff in both his official and individual capacities.

Defendant Sexton contends that Plaintiffs' individual capacity claims under § 1981 brought pursuant to § 1983 and the Equal Protection Clause are due to be dismissed because he is entitled to qualified immunity and the Complaint fails to meet the heightened pleading standard.  When confronted with a motion to dismiss on the basis of qualified immunity, the Eleventh Circuit imposes a "heightened pleading requirement" on plaintiffs.  *See GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998). While Federal Rule of Civil Procedure 8 allows a plaintiff leeway in framing his complaint, the Eleventh Circuit "has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim."[8]  *Id.* (citing *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992)(citing *Arnold v. Bd. of Educ.*, 880 F.2d 305, 309 (11th Cir.1989))). The heightened pleading standard requires "[s]ome factual detail in the pleadings . . . to the adjudication of § 1983 claims. This is particularly true in cases involving qualified immunity, where we must

---

[8]*See supra* nn.2 & 3, stating that Plaintiffs' allegations under § 1981 and the Equal Protection Clause are both treated as being brought pursuant to § 1983.

determine whether a defendant's actions violated a clearly established right." *GJR Invs., Inc.*, 132 F.3d at 1367.  Accordingly, when reviewing a motion to dismiss on qualified immunity grounds, courts are guided both by the regular 12(b)(6) standard and by the heightened pleading requirement.

Under the qualified immunity doctrine, it is well established that "[s]o long as a government official acts within the scope of his discretionary authority and does not violate clearly established law [of which a reasonable person would have known], the doctrine of qualified immunity protects him."  *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002); *Maggio v. Sipple*, 211 F.3d 1346, 1350 (11th Cir. 2000).  A public official is entitled to qualified immunity if his actions were objectively reasonable.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)).  The purpose of qualified immunity is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Saucier v. Katz*, 535 U.S. 194, 206 (2001)).

To be successful on a qualified immunity defense, a public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"[9] *Lee*, 284 F.3d at 1194 (citations omitted).  Here, it is clear that Defendant Sexton was acting within his discretionary authority when making decisions about hiring deputy sheriffs because it is only by virtue of his position as sheriff that he has the authority to appoint, direct, and control the deputy sheriffs who work at the jail.[10]  *See Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998)(citing Ala. Code § 14-6-105 (1975)).

---

[9]In the Eleventh Circuit, to "establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l, Inc.*, 157 F.3d at 1282; *see also Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)(stating that "a government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority'").   A court should not be "overly narrow" in interpreting the term "discretionary authority."   *Jordan v. Doe*, 38 F.2d 1559, 1566 (11th Cir. 1994); *see also Godby*,  996 F. Supp. at 1401 (the determination of whether an officer is acting within his discretionary authority is "quite a low hurdle to clear" because "of the level of generality at which this requirement must be determined").  However, "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice."  *Harbert Int'l, Inc.*, 157 F.3d at 1282 (citing *Espanola Way Corp. v. Meyerson*, 690 F.2d 827, 830 (11th Cir. 1982)).

[10]Plaintiffs do not dispute that Defendant was acting within his discretionary authority. (Doc. 15.)

Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to prove that qualified immunity does not apply. *Lee*, 284 F.3d at 1194. This is a difficult burden to discharge because "only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." *Id.* (quoting *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)(stating that "courts should think long and hard before stripping defendants of immunity")).

The Eleventh Circuit mandates a two-part test to ascertain whether a public official is protected by qualified immunity. First, the Court must determine whether the plaintiff's allegations, if true, establish a constitutional violation. *Vinyard*, 311 F.3d at 1346 (citing *Hope*, 536 U.S. at 735)(As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury," do the facts establish a constitutional violation.). Second, if the Court is convinced that a constitutional right would have been violated under the plaintiff's version of the facts, the Court must determine whether the right was clearly established at the time of the alleged violation. *Vinyard*, 311 F.3d at 1346.

The Court will deny a public official qualified immunity only if the plaintiff convinces the Court that the constitutional right at issue was clearly established at the time of the alleged violation to the degree that these defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights.  *See Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003); *Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002).

### i.    Discrimination.

Plaintiffs allege that Sheriff Sexton racially discriminated against them when hiring deputy sheriffs.  The Court will first consider whether the alleged violation is evident on the face of the complaint.  *See Rich*, 841 F.2d at 1564.[11]

Plaintiffs allege that they are entitled to relief under § 1981 through § 1983 and the Fourteenth Amendment of the United States Constitution because Sheriff Sexton violated their constitutional right to be free from racial discrimination in the employment context by his decisions to hire

---

[11]The heightened pleading requirement is particularly important at this stage of the Court's inquiry, "where we must determine whether a defendant's actions violated a clearly established right." *GJR Invs., Inc.*, 132 F.3d at 1367.  *See supra* for discussion of the heightened pleading requirement.

various white employees instead of Plaintiffs for the position of deputy sheriff. "[A] plaintiff must show a purpose or intent to discriminate in proving an equal protection violation based on racial discrimination." *Lawson v. Curry,* 244 Fed. Appx. 986, 988 (11th Cir. 2007)(quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478 (11th Cir. 1991))(affirming a denial of defendant's motion to dismiss based on qualified immunity since plaintiff had met the heightened pleading requirements); *see also Koch v. Rugg*, 221 F.3d 1283, 1297 (11th Cir. 2000)(Plaintiffs "would have to prove intentional or subjective racial discrimination in this employment decision by [Sheriff Sexton].");[12] *see also Harris v. Conradi*, 675 F.2d 1212, 1217 (11th

---

[12]According to the Eleventh Circuit, "it is well established that [a racial discrimination] claim may be analyzed under the McDonnell Douglas structure." *Lee v. Russell County Bd of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)(where plaintiffs brought a claim under § 1983 on the theory that they were discriminated against because of their race in violation of the Fourteenth Amendment, the court used the McDonnell Douglas analysis as set out in Title VII cases); *Koch v. Rugg*, 221 F.3d 1283, 1298 n.31 (11th Cir. 2000)("Our court has recognized that the analytical structure in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for a prima facie case of Title VII employment discrimination based on circumstantial evidence also is applicable to a claim or racial discrimination under § 1983."); *Brown v. Metro. Atlanta Rapid Transit Auth.*, 2008 WL 60279, at *5 (11th Cir. Jan. 7, 2008)(applying the McDonnell Douglas standard to a racial discrimination claim under § 1981, § 1983, and Title VII); *Washington v. Kroger Co.,* 218 Fed. Appx. 822, 824 (11th Cir. 2007)(citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir.1998)("Both Title VII and § 1981 have the same requirements of proof and present the same analytical framework.").

Cir. 1982)(plaintiffs must demonstrate that defendant purposely discriminated against them on the basis of race when declining to hire them).  To adequately plead a case of racial discrimination, a plaintiff may present specific facts of either direct discriminatory intent or an inference of discrimination by circumstantial evidence.  *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1538 (11th Cir.1988).   According to the Eleventh Circuit, "it is well established that [a racial discrimination] claim may be analyzed under the McDonnell Douglas structure."  *Lee v. Russell County Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir. 1982)(where plaintiffs brought a claim under § 1983 on the theory that they were discriminated against because of their race in violation of the Fourteenth Amendment, the court used the McDonnell Douglas analysis as set out in Title VII cases).[13]  A plaintiff need make only a prima facie showing of racial discrimination in

---

[13]*See also Brown v. Metro. Atlanta Rapid Transit Auth.*, 2008 WL 60279, at *5 (11th Cir. Jan. 7, 2008)(applying the McDonnell Douglas standard to a racial discrimination claim under § 1981, § 1983, and Title VII); *Washington v. Kroger Co.,* 218 Fed. Appx. 822, 824 (11th Cir. 2007)(citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir.1998); *Koch*, 221 F.3d at 1298 n.31 ("Our court has recognized that the analytical structure in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for a prima facie case of Title VII employment discrimination based on circumstantial evidence also is applicable to a claim or racial discrimination under § 1983.").

order to maintain a claim.[14]  *See McDonnell Douglas*, 411 U.S. at 802.  A

prima facie showing raises a rebuttable presumption that an employer has

engaged in racially discriminatory practices.  *See Texas Dep't of Cmty.*

*Affairs v. Burdine*, 450 U.S. 248, 255 (1981).  To adequately plead a prima

facie case of discrimination, a plaintiff must allege that: (1) he is a member

of a protected class, (2) he applied for[15] and was qualified for the position,

(3) he was not hired despite his qualifications, and (4) the position was filled

with other equally or less qualified employees outside his protected class.

*See Mathis v. Wachovia* Bank, 2007 WL 3357732, at * 3 (11th Cir. Nov. 14,

2007); *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1358 (M.D. Ala. 1999).

---

[14]If the plaintiff establishes a prima facie case, the burden shifts to the employer to
"articulate some legitimate, nondiscriminatory reason for the employee's rejection."
*McDonnell Douglas*, 411 U.S. at 802.  The burden then shifts back to the plaintiff to show
that the employer's stated reason was a pretext for discrimination.  *Id.*

[15]"Where an employer does not formally announce a position, but rather uses informal
and subjective procedures to identify a candidate, a plaintiff, in order to establish a
prima facie case of discrimination under McDonnell Douglas framework, need not show
that he applied for the position, only that the employer had some reason to consider him
for the post."  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir.
2005)(citing *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992)).
Here, Plaintiffs do not allege that they applied for the position of deputy sheriff.
However, the Complaint states that such positions are not posted.  In viewing the facts
in the light most favorable to Plaintiffs, Plaintiffs have alleged that while they did not
apply for the position, the employer had a reason to consider them since they indicated
that they were interested and qualified for the position.

In this case, Plaintiffs allege that the defendant discriminated against them in denying them positions as deputy sheriffs because of their race.[16] Plaintiffs are black males, who have been employed with the Sheriff's Department as detention officers since 1998.  As black citizens, Plaintiffs are members of a protected class.

In addition, Plaintiffs claim that they were qualified for the position because they completed and successfully performed on both the civil service exam and the physical agility exam.  Also, Plaintiffs allege that while they indicated that they were interested in and were qualified for a deputy sheriff position, they were never informed of nor selected for such a position. Plaintiffs further contend that while they were qualified and had been employed with the Sheriff's Department since 1998, "whites who had only a few months of employment were being selected as deputy sheriffs."[17]

---

[16]The Complaint provides that "the acts set forth in the Complaint were authorized, ordered, and/or done by the Sheriff."  (Doc. 1 at ¶ 8.)

[17]Plaintiffs claim that "[a]ll [deputy sheriff] hires since 1999 have been white until the filing of the plaintiff's EEOC charge."  (Doc. 1 at ¶¶ 15, 24.)  Folks states that after he successfully completed the requisite exams, he "observed several white employees being selected to become deputy sheriffs while he and other black employees and applicants were only told about grant deputy slots."  *Id.* at ¶ 16. Gandy claims that after he "successfully performed on both exams, [he] observed that at least eighteen (18) whites were offered positions as deputy sheriffs while he was neither offered nor informed

(Doc. 1 at ¶ 25.)   In other words, Plaintiffs claim that their successful performance on the exams and greater experience made them far better qualified for the deputy sheriff position than the white employees who were selected for the position, and that they were not selected solely because of their race.

Construing these allegations liberally in favor of Plaintiffs, Plaintiffs have alleged sufficient facts to satisfy the criteria necessary to allege indirect evidence of racial discrimination; therefore, the Court cannot say as a matter of law that Plaintiffs failed to allege racial discrimination.  *See Shows*, 40 F. Supp. 2d at 1359 (where Shows alleged in his complaint that he applied and was qualified for the position of permanent Police Chief, and that, after he was rejected, an African-American who it appears had not even applied for the job got it, court stated that complaint was sufficient to withstand qualified immunity defense).  Accordingly, Plaintiffs' allegations sufficiently plead a constitutional violation of racial discrimination.

---

about any" such positions.  *Id.* at ¶ 23.

Determining that Plaintiffs' allegations establish a constitutional violation, the Court must determine if Plaintiffs' rights were clearly established for purposes of qualified immunity.  In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Lowe v. Aldridge*, 958 F.2d 1565, 1570 (11th Cir.1992)(quoting *Anderson*, 483 U.S. at 640).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law, the unlawfulness must be apparent." *Id*.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Ed.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997)(citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996)).  In the absence of case law, a plaintiff must show that "the words of a federal statute or federal constitutional provision [are] so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Storck v. City of Coral*

*Springs*, 354 F.3d 1307, 1317 (11th Cir. 2003)(quoting *Vinyard*, 311 F.3d at 1350).

In the Eleventh Circuit, it "is clearly established that the equal protection clause affords [a plaintiff] a right to be free from racial discrimination." *Busby v. City of Orlando*, 931 F.2d 764, 775 (11th Cir. 1991)(citing *Washington v. Davis*, 426 U.S. 229, 239-41 (1976)); *see also Smith v. Lomax*, 45 F.3d 402, 407 (11th Cir. 1995); *Yedell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1064 (11th Cir. 1992); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1478-79 (11th Cir. 1991); *Smith v. State of Ala.*, 996 F. Supp. 1203, 1211 (M.D. Ala. 1998). The cases involving racial discrimination "cover a wide range of employment decisions, including discharge, failure to hire, failure to promote, transfer, and demotion, and make it perfectly clear that intentional racial discrimination is prohibited in the workplace, and that this has been a long-established rule of which employers should be well aware." *Smith v. State of Ala.*, 996 F. Supp. at 1212.  "It is beyond doubt that the principal right allegedly violated by [Defendant Sexton]—the equal protection right to be free from intentional racial discrimination—was clearly established" at the time of the hiring of

various deputy sheriffs.  *Brown*, 923 F.2d at 1478.  Therefore, the rule of law

that Sexton was accused of violating was well established at the time of his

actions.  Thus, Defendant's motion to dismiss based on qualified immunity

is due to be denied as to this issue.

### ii.    Retaliation.[18]

Plaintiffs assert a claim of retaliation pursuant to "§ 1981 and 1981(a)

through § 1983" against Sheriff Sexton.[19]  (Doc. 1; Doc. 15 at ¶ 2.)    The

Court must first determine whether Plaintiffs have plead sufficient facts as

---

[18]To the extent that Plaintiffs' retaliation claim is brought under the Equal Protection Clause, Sheriff Sexton is entitled to qualified immunity.  "The right to be free from retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation."  *Ratliff v. DeKalb County, Ga.*, 62 F.3d 338, 340 (11th Cir.1995); *see also Watkins v. Bowden*, 105 F.3d 1344, 1354-55 (11th Cir.1997)("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause."). Since the Eleventh Circuit has held that "no clearly established right exists under the Equal Protection Clause to be free from retaliation," even in taking the facts in the light most favorable to Plaintiffs, they cannot demonstrate that Sexton violated a constitutional right. *Gardner v. City of Camilla, Ga.*, 186 Fed. Appx. 860, 864 (11th Cir. 2006)(holding that defendants were entitled to qualified immunity as to the § 1983 retaliation claims); *Jolivette v. Arrowood*, 180 Fed. Appx. 883, 886 (11th Cir. 2006)(holding that the district court erred in denying qualified immunity to the defendant supervisors as to the § 1983 Equal Protection Clause retaliation claim since no such right existed).  Accordingly, to the extent that Plaintiffs' retaliation claims are brought under the Equal Protection Clause, Sexton is entitled to qualified immunity.

[19]The basis of Plaintiffs' § 1983 retaliation claim is an alleged violation of § 1981, which itself prohibits an employer from retaliating against its employee as a response to the employee's complaint of race based discrimination.  *See Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412-13 (11th Cir. 1998).

to whether Sheriff Sexton's conduct violated Plaintiffs' rights. In order to survive a motion to dismiss, Plaintiffs must demonstrate that there are sufficient facts plead to show that Sexton acted with retaliatory intent. *See Mathis v. Leggett & Platt*, 2008 WL 124512, at * 2 (11th Cir. Jan. 15, 2008). Because direct evidence of retaliation rarely exists, plaintiffs ordinarily demonstrate retaliatory intent by establishing a prima facie case under the framework set out in *McDonnell Douglas*.[20] In order to adequately plead a prima facie case of retaliation, a plaintiff must allege, through specific facts, that: (1) he engaged in statutorily protected activities; (2) he suffered a material adverse employment action; and (3) that there was a causal connection between the two.[21] *See, e.g., Goldsmith*, 513 F.3d at 1277.

---

[20]Retaliation claims are analyzed under the *McDonnell Douglas* burden shifting framework. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277. First, a plaintiff must establish a prima facie case. *See id.* After the plaintiff has established a prima facie case, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073, 1075 n.54 (11th Cir.1995). The burden then shifts back to the plaintiff, who bears the ultimate burden of proving retaliation by a preponderance of the evidence and that the reason provided by the employer is a pretext for prohibited retaliatory conduct. *Id.*

[21]The Eleventh Circuit has stated that "whether the elements of Title VII and § 1981 retaliation claims are the same is an 'open question' in this Circuit." *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1120 (11th Cir. 2001). For purposes of this motion to dismiss, the Court will use the Title VII elements.

Here, Plaintiffs have alleged that they engaged in statutorily protected activities by filing an EEOC charge of racial discrimination in July 2004 and by voicing concerns about racial disparities to superiors.  *See Adams v. Cobb County Sch. Dist.*, 242 Fed. Appx. 616, 621 (11th Cir. 2007)(plaintiff engaged in statutorily protected activity when he filed a charge of discrimination with the EEOC); *Holified v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997)(stating that it was clear that plaintiff engaged in statutorily protected expression since he filed EEOC complaints and voiced his concerns about racial discrimination to his superiors).

In addition, Plaintiffs have alleged that they subsequently suffered an adverse employment action—that they were not selected as deputy sheriffs although they were qualified applicants.  Plaintiffs claim that once the Sheriff became aware of their EEOC complaint, three black deputy sheriffs were hired, while Plaintiffs were offered no such position.  Essentially, Plaintiffs claim that they were denied a promotion from detention officer to the rank of deputy sheriff because of their EEOC complaints.  *See Adams*, 242 Fed. Appx. at 621 (stating that a denial to a promotion to the principalship was an adverse action); *see also Foley*, 355 F.3d at 339 (a non-

promotion from associate professor to full professor constituted an adverse

action).  Taking the facts in the light most favorable to Plaintiffs, Plaintiffs

have alleged that they suffered an adverse employment action.

With regard to causal connection, a plaintiff must allege "that the

decision-makers were aware of the protected conduct, and that the

protected activity and the adverse action were not wholly unrelated." *Bass*,

256 F.3d at 1119 (citations omitted); *see also Brown v. Metro. Atlanta Rapid*

*Transit Auth.,* 2008 WL 60279, at *7 (quoting *Clover v. Total Sys. Serv., Inc.*,

176 F.3d 1346, 1354 (11th Cir. 1999)("a plaintiff must, at a minimum,

generally establish that the defendant was actually aware of the protected

expression at the time the defendant took the adverse employment

action").[22]  The decision-maker's "awareness may be established either by

direct or circumstantial evidence." *Brown v. Metro. Atlanta Rapid Transit*

*Auth.*, 2008 WL 60279, at *6  (citing *Clover*, 176 F.3d at 1354; *Bass*, 256 F.3d

at 1119)(stating that the decision maker's awareness of the protected

---

[22]*See also Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 2001 WL
50433, at * 6 (11th Cir. 2001); *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir.
2001); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.
2000)(internal quotation marks omitted); *Goldsmith*, 996 F.2d at 1163; *E.E.O.C. v.
Reichhold Chems., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)(citations omitted).

activity might be established by circumstantial evidence, such as "close temporal proximity between the protected activity and the adverse action"); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004)(stating that a plaintiff may satisfy this element by showing a very close temporal proximity between the protected activity and the adverse action).  "The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."  *Brungart*, 231 F.3d at 799; *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)("We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action.").

Here, Plaintiffs claim that Sexton's selection of other blacks as deputy sheriffs after learning of the EEOC charge is evidence of his intentional retaliation against Plaintiffs.  By using the terms "after learning" and "the Sheriff became aware of the [EEOC] complaint" (Doc. 1 at ¶¶ 17, 26, 46) in their retaliation claim, Plaintiffs have alleged that the decision maker had

knowledge of the protected activity, the filing of the EEOC complaint, at the time he hired three other blacks instead of Plaintiffs.  In addition, Plaintiffs claim that "once" the Sheriff was aware of the EEOC complaint, other blacks were hired, while Plaintiffs were not.  Taking these allegations in the light most favorable to Plaintiffs, Plaintiffs have plead a close temporal proximity since Plaintiffs claim that "once" Sheriff was aware of the protected activity he hired other blacks instead of Plaintiffs for the deputy sheriff positions. Thus, Plaintiffs have alleged that Defendant Sexton had knowledge of the EEOC complaint and that there was close proximity between this awareness and the adverse employment action.   At this stage of the proceedings, the Court is unable to conclude as a matter of law that there is a lack of causal connection.

Next, the Court must determine if Plaintiffs' rights to be free from retaliation for complaining of race discrimination were clearly established for purposes of qualified immunity.[23]   In the Eleventh Circuit, it is clearly established that an individual has the right to be free from retaliation for

---

[23]*See supra* Section IV(A)(2)(i) for discussion of how a right is clearly established.

complaining of race discrimination.  *See Andrews*, 140 F.3d at 1411-13; *Tucker v. Talladega City Schs.*, 171 Fed. Appx. 289, 295 (11th Cir. 2006)("*Andrews* does establish that § 1981 encompasses a cause of action for retaliation."); *Johnson v. City of Fort Lauderdale, Fla.*, 126 F.3d 1376, 1378 (11th Cir. 1997)(recognizing that "the right to be free from retaliation for complaining about general workplace racial discrimination w[as] clearly established at the relevant times"); *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003)(stating that the right to be free from retaliation for exercising rights protected by § 1981 is clearly established);  *Marshall v. Daleville City Bd. of Educ.*, 2006 WL 2056581, at * 11 (M.D. Ala. July 24, 2006)(stating that it is clearly established "that the 1991 amendments to § 1981 include retaliation for complaining of race discrimination")(citations omitted).  An objectively reasonable pubic official, therefore, would have known that retaliating against an employee for exercising his legal right to file an EEOC charge of race discrimination was prohibited by law. *See McCann v. Mobile County Pers. Bd.*, 2006 WL 1867486, at *15 (S.D. Ala. July 6, 2006)(stating that, based on *Andrews*, "the proposition that it is unlawful under Section 1981 to retaliate against an employee for complaining of race

discrimination was clearly established when Haley and Turner acted in early 2004"); *Foley*, 355 F.3d at 340 (affirming denial of qualified immunity on a § 1981 retaliation claim); *Marshall*, 2006 WL 2056581, at *11 (stating that an objectively reasonable public official would have known that it was unlawful to retaliate against an assistant superintendent for exercising her right to file an EEOC charge of discrimination).  Thus, Defendant's motion to dismiss as to this issue is due to be denied.

      B.    Title VII.

          1.    Personal Staff Exemption.

Plaintiffs claim that Defendant Sexton discriminated and retaliated against them in violation of Title VII.  Defendant claims that the position of deputy sheriff is exempt from coverage of Title VII by virtue of the personal staff exception.

In order for an individual to have a cognizable claim under Title VII, the person must be an employee.  Under Title VII, the term "employee" means:

> an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy

making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision. With respect to employment in a foreign country, such term includes an individual who is a citizen of the United States.

42 U.S.C. § 2000e(f)(2007).  The determination of whether an individual is an "employee" under Title VII "is a question of federal, rather than of state, law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances at hand."  *E.E.O.C. v. Reno*, 758 F.2d 581, 584 (11th Cir. 1985)(quoting *Calderon v. Martin County*, 639 F.2d 271, 272-73 (5th Cir. 1981)[24](citations omitted)).  "State law is relevant insofar as it describes the plaintiff's position, including his duties and the way he is hired, supervised and fired."  *E.E.O.C.*, 758 F.2d at 584.

Within the definition of "employee," Congress has provided an exception to the term "employee" for the "personal staff" of "any person elected to public office."  *Id*. at 583.  In order to determine whether an

---

[24]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit that were rendered prior to October 1, 1981.

individual is a member of an elected official's "personal staff," the following

factors[25] are applied:

> (1) whether the elected official has plenary powers of
> appointment and removal, (2) whether the person in the position
> at issue is personally accountable to only that elected official,
> (3) whether the person in the position at issue represents the
> elected official in the eyes of the public, (4) whether the elected
> official exercises a considerable amount of control over the
> position, (5) the level of the position within the organization's
> chain of command, and (6) the actual intimacy of the working
> relationship between the elected official and the person filling
> the position.

*Laurie v. Ala. Court of Criminal Appeals*, 88 F. Supp. 2d 1334, 1338 (M.D.

Ala. 2000), *aff'd*, 256 F.3d 1266 (11th Cir. 2001)(citations omitted)(finding

that staff attorneys are not "employees" for purposes of Title VII because

they serve on the "personal staff" of their appointing elected judges).

"[C]ase law indicates that the sixth factor is the most important factor."

---

[25]Other courts, which have addressed the issue of whether deputy sheriffs are exempt under the "personal staff" exception have relied on the following factors:

> (1) the sheriff's authority to hire, promote and terminate the employee,
> (2) the employee's level within the chain of command, (3) the presence of
> an intimate working relationship between the employee and the sheriff, (4)
> the involvement of the employee in policy-making decisions, (5) whether
> the employee worked in the sheriff's campaign, and (6) whether the sheriff
> directly supervises the employee.

*Frazier v. Smith*, 12 F. Supp. 2d 1362, 1367 (S.D. Ga.1998)(citing *Cromer v. Brown*, 88 F.3d 1315, 1323 (4th Cir. 1996); *United States v. Gregory*, 818 F.2d 1114, 1117 (4th Cir. 1987); *Curl v. Reavis*, 740 F.2d 1323, 1328 (4th Cir. 1984); *Owens v. Rush*, 654 F.2d 1370, 1376 (10th Cir. 1981)).

*Id.*; *see also Teneyuca v. Bexar County*, 767 F.2d 148, 152 (5th Cir. 1985)("Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.").  The term "personal staff" "embodies the general and traditional proposition that positions of confidentiality, policy-making or acting and speaking before others on behalf of the chief are truly different from other kinds of employment."  *Shahar v. Bowers*, 114 F.3d 1097, 1104 n.15 (11th Cir. 1997).  Courts have concluded "that this exemption is to be narrowly construed."  *E.E.O.C.*, 758 F.2d at 583 (citing cases from the Tenth Circuit, the District of Oregon, and the Southern District of Georgia where the courts held that the exemption was to be narrowly applied)(citations omitted); *see also Frazier*, 12 F. Supp. 2d at 1366.

In this case, Sheriff Sexton, at all times relevant to the Complaint, was an elected official[26] and deputy sheriffs were on his staff.  The issue is whether deputy sheriffs should be considered members of his "personal

---

[26]Under Alabama Code § 17-14-1, a sheriff is an elected official.  Ala. Code § 17-14-1 (1975).

staff."  The Eleventh Circuit[27] has not addressed whether deputy sheriffs are

considered the "personal staff" of  the sheriff.[28]  Other courts that have

addressed the issue of whether a deputy sheriff falls within the "personal

staff" exception under Title VII are split as to whether a deputy sheriff

qualifies as a member of the sheriff's "personal staff."  *See Cromer*, 88 F.3d

at 1323 (when plaintiff was a lieutenant deputy sheriff, the court found that

he was not a member of the sheriff's "personal staff" because he did not

report directly to the sheriff, he did not work under the sheriff's personal

---

[27]In *Calderon*, the court discussed the personal staff exemption in light of the district court's determination that a deputy sheriff was not an employee.  639 F.2d 271. However, the court did not decide whether a deputy sheriff qualified as the "personal staff" of the sheriff, rather the court remanded for further factual findings about the nature and circumstances of the deputy sheriff's position.  *Id.* at 273.

[28]In the context of elected state attorneys, the Eleventh Circuit has held that the assistant state attorneys should be considered the personal staff of the elected attorney for purposes of Title VII.  *See E.E.O.C.*, 758 F.2d at 584; *Shahar*, 114 F.3d at 1104 n.15. The determination that an assistant state attorney qualifies as "personal staff" of the state attorney is based on the facts that the "nature of the position . . . invests the assistant state attorney with practically all of the duties, responsibilities and discretions of the state attorney;" the assistant state attorney "serve[s] at the pleasure of the state attorney;" and the assistants are "responsible for policy making."  *E.E.O.C.*, 758 F.2d at 584 (where the Florida statutes indicated that assistant state attorneys were vested with powers and responsibilities virtually co-extensive of the appointing state attorney and an assessment of Florida law indicated that the position was one of policy-making level where the assistant state attorney acted upon the powers of the state attorney, the court held that the assistant state attorney was a member of the state attorney's "personal staff"); *see also Frazier*, 12 F. Supp. 2d at 1366.

direction, he had no hand in creating the department's policy, his termination was reviewed by the grievance board, and he was not hired by the sheriff); *Montgomery v. Brookshire,* 34 F.3d 291, 295-97 (5th Cir. 1994)(where sheriff had authority to hire and fire deputy sheriffs, deputy sheriffs were personally accountable to sheriff, and deputy sheriffs represented the sheriff in the eyes of the public, court could not hold as a matter of law that deputy sheriff was a member of the sheriff's "personal staff" because the sheriff barely exhibited any control over the deputies' daily activities, the deputies were on the lowest rung on the chain of command, and there was no actual intimacy in the working relationship between the sheriff and his deputies); *Gregory*, 818 F.2d at 1117 (based on the relationship between the sheriff and the deputy sheriff, where the deputy sheriff merely administered the sheriff's policies, the court could not determine as a matter of law that the deputy sheriff was a member of the sheriff's "personal staff"); *Curl*, 740 F.2d at 1328 (where deputy sheriff was not under sheriff's "personal direction" and did not have a "highly intimate and sensitive" relationship with him, court held that deputy sheriff was not a member of the sheriff's "personal staff"); *but compare Cromer*, 88 F.3d

at 1323 (when plaintiff served as a captain deputy sheriff, the court held

that he was a member of the sheriff's "personal staff" because he was a

member of the command staff, he met weekly with the sheriff to discuss the

substance and merits of the operations, policies, and procedures, the sheriff

promoted and demoted captains, and the captains dealt with matters of

public concern); *Owens*, 654 F.2d at 1376 (holding that the undersheriff who

was second in command and had a close working relationship with the sheriff

was a member of the sheriff's "personal staff"); *Walker v. Conn.*, 106 F.

Supp. 2d 364, 367-68 (D. Conn. 2000)(where the sheriff had the right to hire

deputies, such as Walker, and advise him of any and all work assignments,

to which it is then the duty of the deputy to accede, the court held that the

deputy sheriff was a member of the sheriff's "personal staff").

Courts are "unwilling to treat all deputy sheriffs as employees, or to

exclude them wholesale from [the statute's] protection." *Cromer*, 88 F.3d

at 1322 (quoting *Curl*, 740 F.2d at 1328); *see also Frazier v. Smith*, 12 F.

Supp. 2d 1362, 1367 (S.D. Ga.1998)(courts "have declined to adopt a per se

rule regarding [deputy sheriff's] status").  Instead, a court's determination

of whether a given deputy sheriff should be treated as a member of the

sheriff's "personal staff" depends on a "careful examination of the nature and circumstances of [the deputy's] role in the Sheriff's Department." *Cromer*, 88 F.3d at 1322 (quoting *Curl*, 740 F.2d at 1328).   Courts have repeatedly recognized that the issue of whether an individual qualifies as "personal staff" demands extensive factual analysis because the question of the nature and circumstances of an individual's position is a "highly factual" one.  *See Calderon*, 639 F.2d at 273; *Montgomery*, 34 F.3d at 295; *Cromer*, 88 F.3d at 1323 (stating that a "fact-specific examination of the employee's role is what is required"); *Dubisar-Dewberry v. Folmar*,  883 F. Supp. 648, 651 (M.D. Ala. 1995)("Whether an employee is excluded from Title VII coverage under the 'personal staff' exception requires a factual analysis of the nature of the employment relationship.").  "[T]he highly factual nature of the inquiry necessary to the determination of the 'personal staff' exception does not lend itself well to disposition" by summary judgment or a motion to dismiss. *Teneyuca*, 767 F.2d at 152.

Here, Sheriff Sexton possesses the authority to hire, fire, train, direct, control, and supervise deputy sheriffs.   *See Sanders*, 837 F. Supp. at 1110 (citing *Carr*, 916 F.2d at 1525-26; *Terry v. Cook*, 866 F.2d 373, 377 (11th

Cir.1989)); ALA. CODE § 14-6-105 (1975).  Under Alabama law, "a deputy

sheriff is the general agent of and empowered to enter into business

transactions for the sheriff.  Any transaction within the scope of the sheriff's

duties may be acted upon by his deputy. The deputy sheriff is the alter ego

of the sheriff. . . ." *Terry*, 866 F.2d at 377 (citations omitted). However,

these facts alone are insufficient for the Court to conclude that the deputy

sheriffs are members of the sheriff's "personal staff."  While the case law

relied on by Defendant Sexton states that deputy sheriffs are the "alter ego"

of the sheriff, Sexton has not claimed that his deputy sheriffs possess an

intimate working relationship with him nor has he alluded to any facts which

indicate that the nature and circumstances of the relationship establish that

deputy sheriffs are members of his "personal staff."  Therefore, the Court

finds that at this stage of the litigation, there is not an adequate factual

basis to determine whether the position of deputy sheriff falls within the

"personal staff" exception to Title VII's definition of "employee."  *See*

*Dubisar-Dewberry*, 883 F. Supp. at 652 (finding that at the motion to dismiss

stage, the court did not have an adequate factual basis to determine

whether a child support coordinator fell within the "personal staff"

exemption); *see also Patrick v. City of Florala*, 793 F. Supp. 301, 305 (M.D. Ala. 1992)(finding that the nature of the position is a highly factual question that could not be resolved solely based on the allegations in the pleadings). Accordingly, the motion to dismiss is due to be denied as to this issue.

   2. Individual Capacity.

  Sexton contends that the Title VII claim against him in his individual capacity is due to be dismissed because individual capacity suits are inappropriate under Title VII. According to the Eleventh Circuit, "[i]ndividual capacity suits under Title VII are . . . inappropriate.  The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."  *Busby,* 931 F.2d at 772 (citing *Clanton v. Orleans Parish Sch. Bd.*, 649 F.2d 1084, 1099 & n.19 (5th Cir.1981)(citations omitted)); *see also Hinson v. Clinch County, Ga. Bd. of Educ.*, 231 F.3d 821, 826 n.6 (11th Cir. 2000); *Edwards v. Wallace Cmty. College*, 49 F.3d 1517, 1519 n.3 (11th Cir. 1995).  Recognizing that the Eleventh Circuit has held that individual capacity suits under Title VII are inappropriate, Plaintiff concedes that Title VII does not apply to suits against individuals  (Doc. 15 at 4 n.1), and that no Title VII claim is being brought

against the Sheriff in his individual capacity (Doc. 15 at 10 n.2).  Therefore, Sexton's motion to dismiss the Title VII claim against him in his individual capacity is due to be granted.

V.      Conclusion.

For the reasons stated above, Defendant Sheriff Sexton's motion to dismiss is due to be granted in part and denied in part.  A separate order in conformity with this opinion will be entered.

Done this 17th day of April 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671