FILED
2009 Feb-10 PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| NAPOLEON FOLKS and<br>ALAN GANDY, | ] ] ] | |
| Plaintiffs, | ] ] | |
| vs. | ] ] | 7:07-CV-01726-LSC |
| SHERIFF EDMUND M. SEXTON, SR.<br>as Sheriff, in his individual and<br>official capacity, | ] ] ] ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, filed by Defendant Edmund M. Sexton, Sr. ("Defendant") on November 3, 2008. (Doc. 45.)  Plaintiffs Napoleon Folks ("Folks") and Alan Gandy ("Gandy") filed their Complaint in this Court on September 21, 2007.  (Doc. 1.)  In their Complaint, Folks and Gandy brought claims against Tuscaloosa County Sheriff's Department, Edmond M. Sexton, Sr., and the Tuscaloosa County Civil Service Board for racial discrimination in violation of Title VII, § 1981,

§ 1983, and the Fourteenth Amendment's Equal Protection Clause, as well as retaliation in violation of Title VII, § 1981, § 1983.  The Tuscaloosa County Sheriff's Department and the Tuscaloosa County Civil Service Board were subsequently dismissed from this action.  Defendant's motion to dismiss was granted in part and denied in part, with the Court dismissing Plaintiffs' claims against Defendant in his official capacity for monetary damages under § 1981, § 1983, and the Fourteenth Amendment's Equal Protection Clause.  The Court also dismissed Plaintiffs' Title VII claims against Defendant in his individual capacity.   Defendant has moved for summary judgment on the remaining claims:  1) individual capacity claims under § 1981, § 1983, and the Fourteenth Amendment's Equal Protection Clause; and 2) official capacity claims under Title VII.  The issues raised in the motion for summary judgment have been briefed by the parties and are now ripe for decision.  Upon full consideration of the legal arguments and evidence presented, Defendant's motion will be granted as to all claims.

II.    Facts.[1]

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been

Folks and Gandy are African-American males currently employed as Detention Officers at the Tuscaloosa County Jail ("Jail"). Prior to being hired to work at the Jail, Folk and Gandy both held positions as juvenile officers at the Tuscaloosa County Juvenile Detention Center ("Detention Center"). Folks and Gandy began their employment as Detention Officers at the Jail on the same date, February 23, 1998.

During his tenure at the Jail, Folks has been disciplined or otherwise counseled for the following actions: 1) Policy violations which facilitated the escape of an inmate (suspended 160 hours without pay); 2) Failing to perform a proper head count which delayed response to the escape of an inmate (suspended 3 days without pay); 3) Violating direct orders in making personal calls at the Jail's Medical Center; 4) Tardiness for shift creating security risk for other Detention Officers; 5) Unprofessional behavior toward an inmate; 6) Failing to perform a head count; 7) Failing to perform periodic

---

resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

checks between head counts; and 8) Participating in a 27 minute personal telephone call during work shift.

During his tenure at the Jail, Gandy has been disciplined or otherwise counseled for the following actions:  1) Abuse of sick leave time; 2) Failing to report to Supervisor when taking sick leave; 3) Unprofessional physical altercation with female Detention Officer (charge was founded and returned to supervisor for counseling/reprimand and remedial training if necessary); 4) Inattention to duty for playing cards on a computer while assigned to a duty post (issued official letter of reprimand); 5) Second violation for abuse of sick leave time; 6) Failing to provide contact information when taking leave time and violating chain of command; 7) Verbal altercation with Supervisor; 8) Participating in a 25 minute personal telephone call during work shift; 9) Second verbal altercation with a Supervisor; 10) Repeated tardiness for work shift without an excuse; 11) Tardiness for training session; 12) Excessive Absenteeism; 13) Third violation for abuse of sick leave time; 14) Failing to properly report use of force incident; and 15) Code of Ethics violation for altercation with inmate (suspended five days without pay).

Both Folks and Gandy twice took the written Civil Service exam for a Civil Service Deputy Sheriff position in Tuscaloosa County. Both passed on their second try, Folks on March 19, 2001 and Gandy on August 13, 2001. In addition to the written Civil Service exam, Folks and Gandy were aware that the Sheriff's department established other minimum requirements, the successful completion of which were mandatory for anyone seeking a position as Deputy Sheriff. These minimum requirements are successful completion of a physical agility test, a psychological evaluation, a firearm's test, and a personal interview with the Sheriff. Contrary to the allegations in the Complaint, Folks and Gandy now admit they have never successfully completed the physical agility test, nor have they participated in a psychological evaluation, a firearm's test, or a personal interview with the Sheriff for a position as a Deputy Sheriff.

On October 29, 2004, both Folks and Gandy filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination ("Charge") alleging that, despite meeting and passing all requirements for promotion to Deputy Sheriff, they were nevertheless passed over for the position. Both asserted their belief that they were discriminated against based on race.

Despite the allegations in their submissions to the EEOC, both Folks and Gandy subsequently admitted that they have never completed the requirements to be hired as Deputy Sheriff.  Folks and Gandy maintain that even if they had completed these requirements, they would not be hired as Deputy Sheriffs because of their race.  In their complaint, they claim that all Civil Service Deputy Sheriffs hired in Tuscaloosa Country from 1999 until the filing of Plaintiffs' 2004 EEOC charges were Caucasian.  Both Folks and Gandy now concede that at least six (6) African-Americans were hired for the position during that time period.  Neither Folks nor Gandy are aware of any candidates hired as Deputy Sheriffs, whether Caucasian or African-American, who did not first successfully complete all of the requirements necessary to become a Deputy Sheriff.

In addition to their initial EEOC charge, Folks and Gandy also filed retaliation charges with the EEOC on June 15, 2005.  Folks filed his charge because he felt that the Defendant continued to recommend only white candidates for Deputy Sheriff in retaliation against Folks and Gandy.  In fact, from the date of Folks's retaliation charge until the filing of the instant lawsuit, at least 4 African-American candidates were hired as Deputy

Sheriffs. Gandy filed an EEOC charge of retaliation because he believed that African-American candidates were hired after Folks and Gandy filed their initial charge in order to retaliate against them. However, from the date of Gandy's 2004 EEOC charge until the filing of his retaliation charge, no African-American candidates were hired as Civil Service Deputy Sheriffs.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been

introduced by the party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party." *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872)). "This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV. Analysis.

    A. Discrimination.

Folks and Gandy argue that the Defendant illegally discriminated against them based on their race because they were not promoted to the position of Deputy Sheriff. Because Folks and Gandy have not asserted that they have direct evidence of discrimination, we analyze these claims using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of racial discrimination. *McDonnell Douglas Corp.*, 411 U.S. at

802.  Once the plaintiff has demonstrated a *prima facie* case exists, the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the [adverse employment action]."  *Id*.  This burden is "exceedingly light. . . .  At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004)(quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)(citation and internal quotation marks omitted)).  Lastly, the burden returns to the plaintiff to prove by a preponderance of the evidence that the defendant's reasons were simply pretext for discrimination.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (U.S. 1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.").

To establish a *prima facie* case of discrimination, "[plaintiff] must show that (1) he was in a protected group; (2) he was not given the promotion; (3) he was qualified for the position and (4) someone outside of the protected group was given the position."  *Standard,* 161 F.3d at 1333

(citing *Coutu v. Martin County Bd. of County Commiss'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995)). It is undisputed that Folks and Gandy are African-American and that they they were not promoted to Deputy Sheriff. The Defendant maintains, however, that Folks and Gandy cannot establish the third and fourth prongs of their *prima facie* case.

Folks and Gandy admit that they have not completed the minimum requirements for hire as a Deputy Sheriff. (Doc. 50 at 3-4; Doc. 47, Ex. A at 146; Doc. 47, Ex. B at 285.) They maintain in their opposition to summary judgment, however, that other Caucasian applicants for the position of Deputy Sheriff were allowed to "have certain prerequisites waived."[2] (Doc. 50 at 2-3.) Folks and Gandy support this argument with four candidate letters that state, "Results of Physical Evaluation: To be administered after job offer." (Doc. 50, Exs. A-D.) Folks and Gandy, however, are apparently confused. With the exception of that of Jeffrey Alan Bahr, Plaintiffs have provided only the first page of the candidate letters. A more thorough examination of these letters show that all four of the candidates for Deputy

---

[2]Plaintiffs take this position despite admitting that neither is aware of any candidates hired as Deputy Sheriffs who did not first complete the prerequisites for the position. (Doc. 44, ¶37.)

Sheriff completed the minimum requirements for the position, including the physical agility test. (Doc. 57 at 3; Ex. A.) The "Physical Evaluation" referenced above is a "medical screening" apparently administered to allow the candidates to obtain insurance coverage and is typically not given until after a conditional job offer has been made. (Doc. 57 at 2.) In any event, it is not the same as the physical agility test.

Finally, Folks and Gandy seem to imply that they were denied an opportunity to complete the pre-requisites, as they "could not establish, by themselves, an appointment" for the required evaluations. (Doc. 44 at 14, ¶¶ 1-4.) This accusation apparently is incorrect, as Folks and Gandy have had multiple opportunities to take the physical agility test prior to the filing of the instant lawsuit and have not done so. (Doc. 47, Ex. M at 3.)

Moreover, it is not evident that a person from a non-protected class was given the position for which Folks and Gandy applied. In fact, the undisputed facts in this case indicate that, despite the allegations in Plaintiffs' complaint, at least six (6) qualified African-Americans were hired as Civil Service Deputy Sheriffs during the relevant time period. (Doc. 47, Ex. I at 3.) As Folks and Gandy are not qualified for the position of Deputy

Sheriff and have failed to show that someone outside of the protected group was given the position that they sought, they have failed to establish a *prima facia* case of discrimination.

Furthermore, even if they were able to establish a *prima facia* case of discrimination, the Defendant has provided ample non-discriminatory reasons for not hiring Folks and Gandy. In addition to not completing the requirements for employment as a Deputy Sheriff, discussed in detail above, the personnel files of both Folks and Gandy are replete with disciplinary violations throughout their tenure at the Jail. In fact, their supervisor, Chief of Jail Operations James Taggart, testified that he could not recommend Plaintiffs for the position of Deputy Sheriff based on their employment history at the Jail. (Doc. 47, Ex. L at 2.) Folks and Gandy have provided no evidence to show that such non-discriminatory reasons are a mere pretext to cover racially motivated policies. Plaintiffs' racial discrimination claims therefore fail as a matter of law. Accordingly, summary judgment is due to be granted with respect to Plaintiffs' discrimination claims.

B.  Retaliation.

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. *Cooper*, 390 F.3d at 740; *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994).

Here, while they are able to show the first two prongs of the retaliation test, neither Plaintiff is able to establish the casual relation necessary to show a *prima facie* case of retaliation. In their complaint, Folks and Gandy maintain that Defendant's "selection of other African Americans as deputy sheriffs" after learning of their initial EEOC charge is evidence of purposeful retaliation against the plaintiffs. (Doc. 1 at 13, ¶ 46.) The evidence shows this claim to be baseless. First, no African-Americans were hired as Deputy Sheriffs in the period between the filing of the initial EEOC charge by Folks and Gandy and the retaliation charge. (Doc. 47, Ex. I at Ex. A.) Furthermore, as laid out in more detail above, the Defendant had ample non-discriminatory reasons not to hire Folks and Gandy as Deputy Sheriffs, including their lack of qualifications and previous disciplinary problems. But perhaps most importantly, Folks and Gandy have

provided no evidence of any connection between the hiring decisions made by the Defendant and any retaliatory animus directed at the plaintiffs. Plaintiffs' retaliation claims therefore fail as a matter of law. Accordingly, summary judgment is due to be granted with respect to Plaintiffs' retaliation claims.

V.   Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment is due to be granted. A separate order in conformity with this opinion will be entered.

Done this <u>10th</u> day of <u>February 2009</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671